IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


ROBIN LEE ARCHER,

      Petitioner,

v.                           **CASE NO.:   3:06-cv-00312-RS**

JAMES R. McDONOUGH,
      Secretary, Fla. Dept. of Corrections, et al.,

      Respondents.

_____/

## ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

THIS CAUSE is before the court on an amended petition for a writ of habeas corpus filed by Robin Lee Archer, a Florida death row inmate, pursuant to Title 28, United States Code, Section 2254 (doc. 15). Petitioner has asserted seven claims for relief. Respondent has filed an answer (doc. 19). After careful consideration of the issues raised in the pleadings and for the reasons stated below, the petition is denied.

## I.  FACTS & PROCEDURAL HISTORY

The relevant facts are set out as follows in the Florida Supreme Court's opinion addressing the denial of Petitioner's postconviction relief:

> In 1991, Robin Lee Archer was convicted of armed robbery, grand theft, and first-degree murder. Although Archer was not present when the crime occurred, he supplied the motivation and the inside information for the robbery of the Trout Auto Parts store and the murder of the store clerk, Billy Coker. Three other individuals were found responsible for the crime:  Patrick Bonifay, who shot and killed Coker; Clifford Barth, who assisted Bonifay inside the store; and Larry Edwin Fordham, who drove the getaway car. On direct appeal, this Court summarized the facts of the crime as follows:

> According to the testimony presented at trial, Archer was fired from his job at an auto parts store in March 1990.   The following January he convinced his cousin, seventeen-year-old Pat Bonifay, to kill the clerk he apparently blamed for his having been fired.  Bonifay testified that Archer told him to rob the store to hide the motive for the killing and to wear a ski mask and gloves and also told him the location of the store's cash box and emergency exit.  Bonifay borrowed a handgun from a friend who gave the gun to Archer to give to Bonifay.
>
> Bonifay talked two friends into helping him, and the trio went to the parts store on Friday night, January 24, 1991.  Bonifay could not go through with the murder, however, and they left the store. The next day Archer got after Bonifay for not killing the clerk, and the trio went back to the store that night.  Bonifay shot the clerk and he and one of his friends crawled into the store through the night parts window.  After opening the cash boxes, Bonifay shot the clerk in the head twice as he lay on the floor begging for his life.  Archer later refused to pay Bonifay because he killed the wrong clerk.
>
> Bonifay confessed to several people, one of whom informed the authorities, resulting in the arrest of Archer, Bonifay, and Bonifay's two friends.   The defendants were tried separately, and Archer's jury convicted him of first-degree murder.  The judge agreed with the jury's recommendation and sentenced him to death.  <u>Archer v. State</u>, 613 So. 2d 446, 447 (Fla. 1993).

<u>Archer v. State</u>, 934 So. 2d 1187, 1191-92 (Fla. 2006)(per curiam)("<u>Archer III</u>").

Petitioner was tried in Escambia County, Florida, and convicted of first-degree murder, armed robbery and grand theft.  On July 19, 1991, the jury recommended death by a vote of seven to five.  The trial court imposed the death penalty on September 20, 1991.  On direct appeal, the Florida Supreme Court of affirmed Petitioner's first-degree murder conviction, but vacated his death sentence because the trial court improperly instructed the jury on the heinous, atrocious, or cruel aggravating factor.  <u>Archer v. State</u>, 613 So. 2d 446, 448 (Fla. 1993)("<u>Archer I</u>").  On remand, a new penalty phase was conducted, and the jury recommended a death sentence by a vote of seven to five.

The trial court followed the jury's recommendation and sentenced Petitioner

to death, finding two aggravating circumstances:     (1) the crime was committed while Archer was engaged in or was an accomplice in a robbery, and (2) the crime was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification ("CCP").   Archer v. State, 673 So. 2d 17, 18 n.1 (Fla. 1996)(per curiam)("Archer II"), cert. denied, 519 U.S. 876, 117 S. Ct. 197, 136 L. Ed. 2d 134 (1996).  The trial court also found one statutory mitigating circumstance, that Petitioner had no significant history of prior criminal activity, which it accorded significant weight, and one nonstatutory mitigating circumstance, that Petitioner was a good family member to his grandmother, which it accorded some weight.  Id. at n.2.   The trial court found that the aggravating circumstances outweighed the mitigating circumstances.

Petitioner's death sentence was affirmed on appeal after the resentencing.[1] (See Archer II).  Petitioner then filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850.[2]   His motion was denied by the postconviction court, and he appealed that denial raising three issues.[3]  On appeal, the denial of postconviction relief was affirmed.  See Archer III.  Petitioner also filed a state writ of habeas corpus which was denied.[4]  Id.

---

[1] Petitioner raised the following seven claims for relief on appeal:   (1) the trial court's jury instruction on the CCP aggravator was unconstitutionally vague; (2) the trial court erred in failing to provide a definition of reasonable doubt to the jury; (3) the trial court erred in failing to give the jury any of the general and miscellaneous instructions on principals; (4) the trial court erred in admitting victim-impact evidence; (5) the trial court erred in refusing to instruct the jury that its sentencing recommendation was entitled to great weight; (6) the trial court erred in failing to instruct the jury that it could consider Petitioner's age of 26 as a mitigating factor; and (7) the trial court erred in granting several of the State's cause challenges of jurors who could not recommend death if Petitioner was not the triggerman.  Archer v. State, 673 So.2d 17, 19 (Fla. 1996)(Archer II).

[2] Petitioner raised twenty-one issues in his rule 3.850 motion.  See Archer v. State, 934 So. 2d 1187, 1193 n.3 (Fla. 2006)(Archer III).

[3] Petitioner raised a newly discovered evidence claim, a Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972) claim, and a Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) claim.

[4] Petitioner raised several ineffective assistance of appellate counsel claims.  See Archer III, 934 So. 2d at 1205-07.

Petitioner filed the instant petition (doc. 15) under 28 U.S.C. § 2254.  The petition is ripe for adjudication.

## II.  STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States."  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19.

Section 2254 now provides:

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[5]  The appropriate test in habeas cases was described by Justice O'Connor

---

[5]Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99, 120 S. Ct. at 1499–1503, 1511–16); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13, 120 S. Ct. at 1518–23).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id., 529 U.S. at 412–13; Ramdass v. Angelone, 530 U.S. 156, 165-66, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding. See Wellington v. Moore, 314 F.3d 1256, 1260–61 (11th Cir. 2002); Robinson v. Moore, 300 F.3d 1320, 1343–45 (11th Cir. 2002). First, the court must ascertain the controlling legal principles that are clearly established by the Supreme Court at the time of the state court adjudication. Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343. Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law. Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344. "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the relevant Supreme Court precedent." Wellington, 314 F.3d at 1260 (quoting Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), cert. denied, 535 U.S. 1104, 122 S. Ct. 2310, 152 L. Ed. 2d 1065 (2002) (quoting Williams, 529 U.S. at 405)). "Although a state court's decision

that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404–06). If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority." Fugate, 261 F.3d at 1216. Likewise, if the facts of the Supreme Court cases and the petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." Id. (citing and quoting Williams, 529 U.S. at 406). A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 410. The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Bell v. Cone, 535 U.S. 685, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002) (quoting Williams, 529 U.S. at 411). Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with

unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003). A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by a federal court produces a firm conviction that [the state court] judgment is infected by constitutional error." Williams, 529 U.S. at 389. "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541 U.S. 652, 124 S. Ct. 2140, 2149, 158 L. Ed. 2d 938 (2004) (citation omitted). Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent. Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n.4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence." § 2254(e)(1); see Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).") (dictum); Fugate, 261 F.3d at 1215 (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835–36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); see also Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations). Thus, not only must the state court's factual determination have been unreasonable, but

the court's factual findings must be shown unreasonable by clear and convincing evidence.  See Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); Rutherford v. Crosby, 385 F.3d 1300, 1308 (11th Cir. 2004) ("[Petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record.")).

Finally, in the event that constitutional error is found in a habeas proceeding, the relevant harmless error standard is set forth in Brecht v. Abrahamson, 507 U. S. 619, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993).  The test is "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'  Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but are not entitled to habeas relief based on trial error unless they can establish 'actual prejudice.'" Id. at 637 (quoting Kotteakos v. United States, 328 U. S. 750, 776, 66 S. Ct. 1239, 1253, 90 L. Ed. 1557 (1946)).[6]

Within this framework, the court will review Petitioner's claims.

### III.    PETITIONER'S CLAIMS

**A.    Ground One:**

**The finding that the Cold, Calculated and Premeditated ("CCP") instruction given by the trial court was harmless error violated Petitioner's Fifth, Sixth, Eighth and Fourteenth Amendment rights.**

Petitioner contends that the Florida Supreme Court erred in its determination that the unconstitutionally vague CCP instruction, which was given at his resentencing trial, was harmless error.  Petitioner cites Sullivan v. Louisiana, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993), in support of his contention.  His

---

[6]This harmless error standard is also applicable to cases involving habeas challenges to death sentences. See Calderon v. Coleman, 525 U.S. 141, 119 S. Ct. 500, 142 L. Ed. 2d 521 (1998); Duest v. Singletary, 997 F.2d 1336 (11th Cir. 1993); Hicks v. Head, 333 F.3d 1280 (11th Cir. 2003).

reliance on <u>Sullivan v. Louisiana</u>, however, is misplaced.[7]

## 1.    State Proceedings

In his appeal after resentencing, Petitioner raised the issue that the standard CCP jury instruction given by the trial court at his resentencing was unconstitutionally vague.  At trial, his counsel objected to the standard instruction and proposed an alternative instruction, which the trial judge rejected.  The Florida Supreme Court found that the standard instruction given was one that it had found to be unconstitutionally vague in <u>Jackson v. State</u>, 648 So. 2d  85 (Fla. 1994).[8]  <u>See Archer II</u>, 673 So. 2d at 19.

In <u>Jackson</u>, the Florida Supreme Court determined that "Florida's standard CCP jury instruction suffers from the same constitutional infirmity as the HAC-type instructions which the United States Supreme Court found lacking in <u>Espinosa [v. Florida</u>, 505 U.S. 1079, 112 S. Ct. 2926, 120 L. Ed. 2d 854 (1992)], <u>Maynard [v. Cartwright</u>, 486 U.S. 356, 108 S. Ct. 1853, 100 L. Ed. 2d 372 (1988)], and <u>Godfrey [v. Georgia</u>, 446 U.S. 420, 100 S. Ct. 1759, 64 L. Ed. 2d 398 (1980)]–the description of the CCP aggravator is 'so vague as to leave the sentencer without sufficient guidance for determining the presence or absence of the factor.'" <u>Jackson</u>, 648 So.2d at 90 (quoting  <u>Espinosa</u>, 505 U.S. at 1081). The <u>Jackson</u> court then clarified the CCP aggravator as follows:

> [T]he jury must determine that the killing was the product of cool and calm reflection and not an act prompted by emotional frenzy, panic, or a fit of rage (cold), <u>and</u> that the defendant had a careful plan or prearranged design to commit murder before the fatal incident (calculated) <u>and</u> that the defendant exhibited heightened premeditation (premeditated) <u>and</u> that the defendant had no pretense of moral or legal

---

[7]The Court in <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993), addressed a constitutionally infirm reasonable doubt instruction, not an invalidated aggravating circumstance.  The proper Supreme Court precedent which is applicable to this claim is discussed <u>infra</u>.

[8]The trial court's instruction as to this aggravating factor was: "the crime for which the defendant is to be sentenced was committed in a cold, calculated and premeditated manner, without any pretense of moral or legal justification."  Resp.'s Exh. II, Tab AA  at 495.

justification.

**Jackson**, 648 So.2d at 89 (citations omitted).  **Because Petitioner had properly preserved the issue of the improper CCP aggravator instruction for appeal, the Florida Supreme Court conducted a harmless-error review[9] of the standard instruction given at Petitioner's resentencing and concluded that although the trial court erred in giving the unconstitutionally vague standard instruction, all four elements of the CCP aggravator "would exist under any definition of the terms." Archer II, 673 So. 2d at 19.  Therefore, the court found that the error was harmless.**

**2.    Clearly Established Supreme Court Law**

There is no United States Supreme Court case holding that a CCP instruction, like the one given in Petitioner's resentencing trial, is constitutionally flawed. However, in **Furman v. Georgia**, 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972), the Supreme Court held that a sentence of death may not be imposed under a sentencing procedure that creates a substantial risk that the punishment will be inflicted in an arbitrary and capricious manner.   An aggravating factor must provide "a meaningful basis for distinguishing the few cases in which [the penalty] is imposed from the many cases in which it is not." **Godfrey v. Georgia**, 466 U.S. at 427 (quoting **Furman v. Georgia**, 408 U.S. at 313). An aggravating factor "must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." **Zant v. Stephens**, 462 U.S. 862, 877, 103 S. Ct. 2733, 2742, 77 L. Ed. 2d 235 (1983).  Therefore, the application of a vague aggravator is a violation of the Eighth Amendment because it "creates the risk that the jury will treat the defendant as more deserving than he otherwise might be by relying on the existence of an illusory circumstance." **Stringer v. Black**, 503 U.S. 222, 235, 112 S. Ct. 1130, 1139, 117 L. Ed. 2d 367 (1992).

---

[9]See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986), regarding the harmless error review applied by the Florida Supreme Court.

Notwithstanding these rulings, the Supreme Court has held that a death sentence imposed by a jury that has relied, in part, on an invalid or improperly defined aggravating circumstance does not necessarily require an appellate court to vacate a death sentence and remand the case to a jury for resentencing; rather, a death sentence may be upheld, despite a constitutionally infirm instruction, if the state appellate court either (1) reweighs the aggravating and mitigating evidence or (2) conducts a harmless-error review.  In Clemons v. Mississippi, 494 U.S. 738, 745, 110 S. Ct. 1441, 1446, 108 L. Ed. 2d 725 (1990), the Court found that:

> [n]othing in the Sixth Amendment as construed by our prior decisions indicates that a defendant's right to a jury trial would be infringed where an appellate court invalidates one of two or more aggravating circumstances found by the jury, but affirms the death sentence after itself finding that the one or more valid remaining aggravating factors outweigh the mitigating evidence.

Id., 494 U.S. at 745 (emphasis added).  "We accordingly see nothing in appellate weighing or reweighing of the aggravating and mitigating circumstances that is at odds with contemporary standards of fairness or that is inherently unreliable and likely to result in arbitrary imposition of the death sentence."  Id. at 750.  See also Stringer v. Black, supra.  In conducting a harmless-error analysis, "a[] [state] appellate court may choose to consider whether absent an invalid factor, the jury would have reached the same verdict or it may choose instead to consider whether the result would have been the same had the invalid aggravating factor been precisely defined."  Jones v. United States, 527 U.S. 373, 402, 119 S. Ct. 2090, 2109, 144 L. Ed. 2d 370 (1999)(citing Clemons, 494 U.S. at 753-54)).

In other words, even if an aggravating factor is found to be unconstitutionally vague, a jury's improper reliance on the factor may be "cured" by the state appellate court.  The state appellate court may apply a narrowing construction to the vague aggravator.  See Lambrix v. Singletary, 520 U.S. 518, 537 n. 6, 117 S. Ct. 1517, 1526, 137 L. Ed. 2d 771 (1997)(wherein the Court noted that "Walton [v. Arizona, 497 U.S. 639, 110 S. Ct. 3047, 111 L. Ed. 2d 511 (1990), overruled on other grounds, Ring v.

**Arizona**, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002)] indicated that our precedents provided two distinct and permissible routes to satisfy the Eighth Amendment where the sentencer considered a vague aggravator:  a court's finding of the aggravator under a proper limiting construction, *or* independent reweighing of the circumstances."). See also Godfrey v. Georgia, supra; Maynard v. Cartwright, supra; Lewis v. Jeffers, 497 U.S. 764, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990); and Bell v. Cone, 543 U.S. 447, 125 S. Ct. 847, 160 L. Ed. 2d 881 (2005)(per curiam)(reversing the Sixth Circuit's determination that the Tennessee Supreme Court did not apply a narrowing construction of the HAC aggravator because it did not specifically cite to the case in which it had adopted a narrowing construction of that aggravator).  In Bell, the Court, citing Walton as the law governing vagueness challenges to statutory aggravating circumstances, noted that if the aggravator is found to be too vague to provide guidance to the sentencer, "then the federal court must attempt to determine whether the state courts have further defined the vague terms and, if they have done so, whether those definitions are constitutionally sufficient, i.e., whether they provide *some* guidance to the sentencer." Bell, 543 U.S. at 852 (quoting Walton, 497 U.S. at 654). Finally, the Court in Lewis v. Jeffers, noted that:

> [b]ecause federal habeas corpus relief does not lie for errors of state law, federal habeas review of a state court's application of a constitutionally narrowed aggravating circumstance is limited, at most, to determining whether the state court's finding was so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation.

Id., 497 U.S. at 780 (internal citations omitted).

3.    Federal Review of State Court Decision

As an initial matter, this Court will assume, without deciding, that the CCP aggravator instruction given to the resentencing jury was unconstitutionally vague. However, as discussed above, a determination that the CCP instruction was flawed does not necessarily entitle Petitioner to a remand or a new sentencing trial; rather,

a state appellate court may choose to determine whether the evidence in the case supports the existence of the aggravating circumstance under its proper, constitutionally sufficient definition.

Pursuant to Walton v. Arizona, the first inquiries then are whether the state appellate court has further defined the constitutionally vague terms and, if so, whether those definitions are constitutionally sufficient.  See also Bell v. Cone, 543 U.S. at 453.  Here, the Florida Supreme Court emphasized, in Jackson, the need to provide adequate guidance to a sentencing jury that the CCP aggravator requires more than premeditated first-degree murder:

> [T]his Court has found it necessary to explain that the CCP statutory aggravator applies to 'murders more cold-blooded, more ruthless, and more plotting than the ordinarily reprehensible crime of premeditated first-degree murder,' and where the killing involves 'calm and cool reflection.'  The Court has adopted the phrase 'heightened premeditation' to distinguish this aggravating circumstance from the premeditation element of first-degree murder.  The Court has also explained that 'calculation' constitutes a careful plan or a prearranged design.  These explications by the Court make it clear that CCP encompasses something more than premeditated first-degree murder.

Id. at 88-89 (internal citations omitted).  Like the HAC-type instructions which are unconstitutionally vague because "[a] person of ordinary sensibility could fairly characterize every murder as 'outrageously or wantonly vile, horrible and inhuman," the court found that the premeditated component of Florida's standard CCP instruction posed the same problem.  Id. at 89.  "Without the benefit of an explanation that some 'heightened' form of premeditation is required to find CCP, a jury may automatically characterize every premeditated murder as involving the CCP aggravator."  Id.  The court also stated that:

> It would also be reasonable for the general public to consider premeditated first-degree murder as 'cold-blooded murder.'  Without legal guidance that the

coldness element is only present when the killing involves 'calm and cool reflection,' or when the murder is 'more cold-blooded, more ruthless, and more plotting than the ordinarily reprehensible crime of premeditated first-degree murder,' the average juror may automatically characterize all premeditated murders as CCP.  This Court has also explained that calculation must involve a 'careful plan or prearranged design.    Yet, [under the standard CCP aggravator instruction,] the jury receives no instruction to illuminate the meaning of the terms 'cold,' 'calculated,' or 'premeditated.'  Moreover, the meaning of each of these terms is particularly important because the CCP factor is not applicable unless the crime 'was cold, calculated, *and* premeditated.' . . . Certainly these requirements call for more expansive instructions to give content to the CCP statutory factor.

**Id** (internal citations omitted).  The <u>Jackson</u> court then set forth the following narrower instruction for the CCP aggravator, stating that "[u]ntil such time as a new standard jury instruction can be adopted, the following instruction should be used:"

The crime for which the defendant is to be sentenced was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification.  In order for you to consider the aggravating factor, you must find the murder was cold, and calculated, and premeditated, and that there was no pretense of moral or legal justification.  "Cold" means the murder was the product of calm and cool reflection.  "Calculated" means the defendant had a careful plan or prearranged design to commit the murder.  "Premeditated" means the defendant exhibited a higher degree of premeditation than that which is normally required in a premeditated murder.  A "pretense of moral or legal justification" is any claim of justification or excuse that, though insufficient to reduce the degree of homicide, nevertheless rebuts the otherwise cold and calculating nature of the homicide.

**Id**.

The better defined instruction for the CCP aggravator set forth by the

Florida Supreme Court in Jackson is constitutionally sufficient.  In fashioning the instruction, the Jackson court set forth the applicable Supreme Court precedent governing vagueness challenges to aggravating factors and addressed the concerns raised in those cases.  Jackson, 648 So. 2d at 90. The narrowed construction of the CCP aggravator adopted in Jackson comports with Supreme Court precedent governing constitutionally vague aggravators and provides guidance to the sentencer to determine the presence or absence of the aggravator.[10]

The Florida Supreme Court applied the narrowed construction of the CCP aggravator set forth in Jackson to the facts of Petitioner's case.  Archer II.  The Archer II court thoroughly analyzed the evidence in the case as it related to each element required to establish the CCP aggravator.  The court found that all four elements of the aggravator were present in Petitioner's case "under any definition of the terms,"  Archer II, 673 So. 2d at 19, and the court provided the following detailed analysis in support of its conclusion:

> Harmlessness exists if the record supports a finding that, beyond a reasonable doubt, the murder could only have been cold, calculated, and premeditated without any pretense of moral or legal justification even if the proper instruction had been given.  The record in this case reveals that all four of these elements would exist under any definition of the terms.
>
> The first element is that the killing was a product of cool and calm reflection and not an act prompted by emotional frenzy, panic, or a fit

---

[10]While the United States Supreme Court has not directly addressed the constitutional sufficiency of this narrowed instruction, it is notable that the Eleventh Circuit Court of Appeals has rejected a vagueness challenge to Florida's former standard CCP instruction, the instruction given in Petitioner's case.  Harich v. Wainwright, 813 F.2d 1082, 1102 (11th Cir. 1987) ("While most capital murders require premeditation, the Florida courts have construed § 921.141(5)(i) to require a greater degree of premeditation and cold-bloodedness than is required to obtain a first degree murder conviction.  See Brown v. State, 473 So. 2d 1260, 1268 (Fla. 1985) ("[cold, calculated] factor places a limitation on the use of premeditation as an aggravating circumstance in the absence of some quality setting the crime apart from mere ordinarily premeditated murder"), cert. denied, — U.S. —, 106 S.Ct. 607, 88 L. Ed. 2d 585 (1985).  Given this limiting construction, § 921.141(5)(i) is a facially valid aggravating circumstance because it genuinely narrows the class of persons eligible for the death penalty").

of rage.  This was a contract murder, which is by its very nature cold. See Dailey v. State, 594 So. 2d 254, 259 (Fla. 1991) (finding that this aggravating circumstance is reserved for murders such as executions, contract murders and witness elimination killings).  The facts of the murder itself prove the existence of a careful plan or prearranged design to kill beyond a reasonable doubt.  Archer not only hired Patrick Bonifay, his cousin, to commit the murder but also wanted Bonifay to disguise the murder as robbery.  To this end, Archer provided Bonifay with a plan which included a description of the store's security system and the location of the store's cash box and emergency exit.  Archer not only detailed what Bonifay should say to the clerk and when to shoot him, but Archer secured the gun and delivered it to Bonifay.  Moreover, when Bonifay returned after killing the wrong clerk, Archer refused to pay him on the agreement.  Under these facts, we find that the murder resulted from a careful plan or prearranged design beyond a reasonable doubt.

Archer's acts were not only calm and careful, but they exhibited heightened premeditation over and above what is required for unaggravated first-degree murder.  This contract murder proceeded over a period of several days and included an aborted attempt.  Finally, Archer's actions clearly do not demonstrate any pretense of moral or legal justification.  Banda v. State, 536 So. 2d 221, 225 (Fla. 1988), cert. denied, 489 U.S. 1087, 109 S. Ct. 1548, 103 L. Ed. 2d 852 (1989) (defining pretense of moral or legal justification as any claim of justification or excuse that, though insufficient to reduce degree of homicide, nevertheless rebuts otherwise cold and calculating nature of homicide).  Despite Archer's contention that harmless error is inappropriate in this case because the jury could have concluded that Archer provided Bonifay with only a plan to rob the clerk and not a plan to murder, our review of the record does not support Archer's position.  Accordingly, the error in instructing the jury as to cold, calculated premeditation is harmless because all four elements of this aggravator exist under any definition.

Archer II, 673 So. 2d at 19-20 (several citations omitted).  In its harmless-error analysis then, it is clear that the Florida Supreme Court considered whether the result would have been the same had the invalid aggravating factor been more precisely defined (see Jones, 527 U.S. at 402).  The court unambiguously found that Petitioner would have been sentenced to death even if the proper instruction

had been given.

Additionally, it is noteworthy that the trial court  appears to have applied the correct construction of the CCP aggravator in its analysis of the case, despite having given the resentencing jury the standard instruction:

> The Supreme Court of Florida uses the phrase "heightened premeditation" to distinguish this aggravating circumstance from the premeditation element of first-degree murder.  The evidence must show that the Defendant planned to kill or arranged to commit the murder before the crime began.  This aggravating circumstance is reserved primarily for execution or contract murders, or witness-elimination killings, but it is also applicable to homicides evincing a careful plan or prearranged design.  Rutherford v. State, 545 So.2d 853 (Fla. 1989).
>
> The merciless killing of Billy Wayne Coker is the classic case of "murder for hire"–a contract murder, an execution.  Archer sought out Patrick Bonifay for the purpose of avenging some perceived wrong by killing the one that he felt responsible.  Whether payment was to be the money taken in the robbery or a satchel of money as claimed by Bonifay, Archer procured his cousin to kill the store clerk.  Archer planted the seed in Bonifay's fertile mind, he concocted the plan to gain entry to the store, he urged the use of ski masks to thwart the video and gloves to thwart identification, he disclosed the location of the cash box and suggested the need for bolt cutters to open it, and he designed the gateway through the emergency exit.  He aided in securing the gun and in ensuring its delivery to Bonifay.
>
> This plan proceeded over a period of several days–ample time for reflection.  When the first attempt failed, Archer directed and insisted that Bonifay try again and go through with the murder.  It was carried out just as he directed except that the wrong man was on duty.  Bonifay shot to death Billy Wayne Coker, believing him to be the clerk Archer had commissioned him to kill.  By his actions, Archer had procured, aimed, cocked, and fired the gun just the same as though he had been present.  It was Archer's motive, his intent, his purpose, his plan, his vengeance, and his procurement of the murder weapon which energized and enabled the others to carry out the robbery and murder.  The crime was the product of a cold, calculated plan, ruthlessly and mercilessly devised, to kill the clerk on whom Archer desired to wreak vengeance.  The degree of cunning and planning over time revealed in the facts of this case clearly illustrates the "heightened premeditation"

**sufficient to establish beyond any reasonable doubt this aggravating circumstance.**

**Sentencing Order, Resp.'s Exh. II, Tab DD at 140-42.**

Petitioner, however, contends that the jury could have interpreted the facts differently from how the majority interpreted them in its harmless-error review. His argument mirrors the concerns raised by the dissent in <u>Archer II</u>'s 4-3 decision.  According to the dissent, it cannot be said beyond a reasonable doubt that the CCP aggravator applied because "there is some evidence that would support the defendant's position that, at most, he urged the actual gunman to commit a robbery, but not a murder."  <u>Archer II</u>, 673 So.2d at 22.  The dissent suggests that the case should have been remanded for resentencing, the route that was chosen in <u>Jackson</u>, because to do otherwise would "directly conflict" with <u>Jackson</u>.  <u>Id</u>. at 24.

I find the dissent's position in <u>Archer II</u> to be without merit.  The majority's decision in <u>Archer II</u> to conduct a harmless-error analysis comports with <u>Jackson</u>'s own acknowledgment that a harmless-error analysis may properly cure a jury's weighing of an invalid instruction:

> In <u>Stringer v. Black</u>, 503 U.S. 222, 232, 112 S. Ct. 1130, 1137, 117 L.Ed.2d 367 (1992), the Supreme Court addressed the role of the reviewing court when the sentencing body is told to weigh an invalid factor in its decision:
>
> [A] reviewing court may not assume it would have made no difference if the thumb had been removed from death's side of the scale.  <u>When the weighing process itself has been skewed, only constitutional harmless-error analysis or reweighing at the trial or appellate level suffices to guarantee that the defendant received an individualized sentence.</u>

<u>Jackson</u>, 648 So.2d at 90 (emphasis added).  Thus, the majority's decision in <u>Archer II</u> to conduct a harmless-error analysis does not "directly conflict" with

Jackson as the dissent incorrectly states in Archer II.  Simply because the Florida Supreme Court in Jackson chose to vacate the sentence of death and remand the case to a new sentencing jury does not require the court to select the same course of action in a different case based on a different set of facts.

The facts in Petitioner's case are different from the facts in Jackson.  In Jackson, substantial questions existed about the defendant's state of mind at the time she shot and killed a police officer.  Specifically, the defendant contended that, at the time of the shooting, she was under the influence of drugs and alcohol; had a flashback of prior sexual assault; perceived the struggle with the officer as an attempted rape; and shot the officer as the result of a panic attack. Jackson, 649 So.2d at 87.  The defendant had presented expert testimony that she suffered from post-traumatic stress disorder as a result of extended sexual abuse by her stepfather and that she suffered from battered woman syndrome.  Id. Three mental health experts testified that the defendant was under the influence of extreme emotional and mental disturbance and that her capacity to appreciate the criminality of her conduct or to conform her conduct to the requirements of the law were substantially impaired.  Id.  In Petitioner's case, the facts are less complex – one either accepts Archer's version that he urged the gunman to commit a robbery or rejects it.  The majority found that Petitioner planned a murder, not a robbery, and that all four elements of the CCP aggravator were present, including the "heightened premeditation over and above what is required for unaggravated first-degree murder."  Archer II, 673 So.2d at 19.

Upon review of the record, the state court's adjudication of this issue is not objectively unreasonable.  The court cited Jackson and determined that the facts of the case supported each element necessary for the existence of the CCP aggravator.  Petitioner has failed to rebut, by clear and convincing evidence, the factual determinations made by the state court. The state court's factual findings are supported by the record and are owed deference by this Court.  Significantly,

Petitioner does not contend that the state court failed to engage in harmless-error review as required by Clemons, nor does he demonstrate how the state court's analysis is an unreasonable application of established Supreme Court law.

Therefore, this Court is satisfied that Petitioner's death sentence was not imposed in an arbitrary or capricious manner and that any Eighth Amendment violation was cured by the state appellate court's harmless-error analysis.  The CCP instruction, as more precisely defined and applied by the Florida Supreme Court, provides a meaningful basis for distinguishing Petitioner's case from those in which a death sentence is not appropriate, thus genuinely narrowing the class of persons eligible for the death penalty.  See Furman v. Georgia, Zant v. Stephens, and Stringer v. Black, supra.  Further, the state court's findings were not so arbitrary and capricious as to constitute an independent due process or Eighth Amendment violation.  See Lewis v. Jeffers, 497 U.S. at 780.  Therefore, Petitioner is not entitled to relief on this ground.

**B.    Ground Two:**

**Trial court's failure to instruct the sentencing jury on the definition of reasonable doubt constitutes fundamental error in violation of Petitioner's Fifth, Sixth, Eighth and Fourteenth Amendment rights.**

Petitioner contends that the failure of the trial court to give a jury instruction defining reasonable doubt at his resentencing trial constitutes a fundamental error and requires a new sentencing hearing.   Respondents contend that this claim is procedurally barred.

**1.    State Proceedings**

Petitioner raised this issue in his direct appeal after resentencing ("Archer II"), and the Florida Supreme Court held that because Petitioner's attorney failed to object to the instruction at trial, the issue could only be raised on appeal if fundamental error occurred.  The court stated:

> [f]undamental error is "error which reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error."  State v.

**Delva**, 575 So. 2d 643, 644-45 (Fla. 1991)(quoting **Brown v. State**, 124 So. 2d 481, 484 (Fla. 1960)).  While the State must prove each element of the crime beyond a reasonable doubt, our cases have not found error when a jury is instructed on this standard but not given a definition of the term.  **See** **Barwicks v. State**, 82 So. 2d 356 (Fla. 1955); **Knight v. State**, 60 Fla. 19, 53 So. 541 (1910); **accord** **Victor v. Nebraska**, 511 U.S. 1, 114 S. Ct. 1239, 1243, 127 L. Ed. 2d 583 (1994)(stating that a trial court must instruct the jury on the necessity that the defendant's guilt be proven beyond a reasonable doubt; however, the United States Constitution does not require a trial court to define reasonable doubt for the jury).  Because we find that this instruction appropriately holds the State to the burden of proving each aggravating circumstance beyond a reasonable doubt, we hold that failure to define reasonable doubt to the jury in the sentencing phase of a capital trial is not fundamental error.

**Archer II**, 673 So. 2d at 20.

**2.     Clearly Established Supreme Court Law**

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[11] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  **Duncan v. Henry**, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting **Picard v. Connor**, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).

---

[11]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)  the applicant has exhausted the remedies available in the courts of the State; or

(B) (i)  there is an absence of available State corrective process; or

(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, supra, 513 U.S. at 365-66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277-78.

An issue that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review.  O'Sullivan, 526 U.S. at 839-40, 848, 119 S. Ct. at 1734; Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  Coleman v. Thompson, 501 U.S. 722, 734-35 and n. 1, 111 S. Ct. 2546, 2555, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); accord Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), rev'd on other grounds, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  See Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be firmly established and

regularly followed, that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424-25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

To overcome a procedural default, the petitioner must show cause for the procedural default and prejudice attributable thereto.  See  Murray v. Carrier, 477 U.S. 478, 485, 106 S. Ct. 2639, 2644, 91 L. Ed. 2d 397 (1986)); Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, supra, 477 U.S. at 488).   Lack of counsel or ignorance of available procedures is not enough to establish cause.  Tower v. Phillips, supra. In order to prove prejudice, a petitioner must show "not merely that the errors at this trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 1596, 71 L. Ed. 2d 816 (1982)(emphasis in original).

If the petitioner cannot show cause, he may still survive a procedural bar by proving that the failure to hear the merits of the claim would endorse a fundamental miscarriage of justice.  Murray, supra, 477 U.S. at 495.  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the
> conviction of an innocent person is extremely rare.  To be credible,

> such a claim requires [a] petitioner to support his allegations of
> constitutional error with new reliable evidence -- whether it be
> exculpatory scientific evidence, trustworthy eyewitness accounts, or
> critical physical evidence -- that was not presented at trial.

**Id**.

**3.    Federal Review of State Court Decision**

The Florida Supreme Court found Petitioner's claim to be procedurally
barred because he failed to preserve the issue for appeal, and no fundamental
error occurred which would excuse the default.  Because Petitioner is barred by
state procedural rules from exhausting the substance of his claims, procedural
default exists for purposes of federal habeas review.  **See Coleman v. Thompson,
supra.**  Additionally, Petitioner has not made any  showing to excuse his default,
i.e., he has not shown cause for the default nor argued resulting prejudice.

Furthermore, he has not demonstrated a fundamental miscarriage of
justice necessary for a federal habeas court to reach the merits of his claim.
Petitioner contends that the trial court's failure to give the jury an instruction
defining reasonable doubt constitutes a fundamental or structural error in his
resentencing.  His argument fails to meet the fundamental miscarriage of justice
exception because he has not demonstrated that "a constitutional violation has
probably resulted in the conviction of one who is actually innocent."  **Schlup,
supra,** 513 U.S. at 327.  In addition, "'[t]o be credible,' a claim of acutal innocence
must be based on reliable evidence not presented at trial."  **Calderon v.
Thompson,** 523 U.S. 538, 559, 118 S. Ct. 1489, 140 L. Ed. 2d 728 (1998).

Moreover, even if this issue were not procedurally barred, the reasonable
doubt jury instruction given in Petitioner's case is constitutionally acceptable.  In
a criminal case, the government must prove each element of the crime charged
beyond a reasonable doubt.  **In re Winship,** 397 U.S. 358, 361, 90 S. Ct. 1068, 1072,
25 L. Ed. 2d 368 (1970).  However, in **Victor v. Nebraska,** 511 U.S. 1, 5, 114 S. Ct.
1239, 1243, 127 L. Ed. 2d 583 (1994), the Court  held that:

> [t]he beyond a reasonable doubt standard is a requirement of due
> process, but the Constitution neither prohibits trial courts from
> defining reasonable doubt nor requires them to do so as a matter of
> course.  Indeed, so long as the court instructs the jury on the
> necessity that the defendant's guilt be proved beyond a reasonable
> doubt, the Constitution does not require that any particular form of
> words be used in advising the jury of the government's burden of
> proof.  Rather, "taken as a whole, the instructions [must] correctly
> conve[y] the concept of reasonable doubt to the jury."

(Internal citations omitted).

"[T]rial courts must avoid defining reasonable doubt so as to lead the jury to convict on a lesser showing than due process requires."  Id. 511 U.S. at 22-23. When reviewing a reasonable doubt instruction, the instruction as a whole must be considered to determine if the jury was mislead as to the government's burden of proof.  See Harvell v. Nagle, 58 F. 3d 1541, 1542 (11th Cir. 1995); Johnson v. Alabama, 256 F.3d 1156, 1191 (11th Cir. 2001).   The proper inquiry as defined by the Supreme Court is "whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the Winship standard."  Victor, supra, 511 U.S. at 6.

In the instant case the trial judge instructed the jury that "[e]ach aggravating circumstance must be established beyond a reasonable doubt before it may be considered by you in arriving at your decision."  Resp.'s Exh. II, Tab AA at 496.  This instruction was adequate to inform the jury of the standard to be used in making their decision, but did not include any language that could possibility have led the jury to make their sentencing recommendation on a lesser showing of proof.   In fact, Petitioner makes no argument that the jury was misled as to the required standard of proof.

Because the Florida Supreme Court rested its judgment on a procedural bar and the court correctly applied a procedural default principle of state law, Petitioner is not entitled to federal habeas review of this claim unless he shows cause for and prejudice from his failure to raise the claim on direct appeal, or that

a fundamental miscarriage of justice would result from this court's failure to review the merits of the claim.  As discussed <u>supra</u>, Petitioner has failed to establish that he is entitled to relief under the fundamental miscarriage of justice exception to the procedural bar.  Therefore, he is not entitled to federal habeas review of his claim of trial court error.  <u>Murray v. Carrier</u>, 477 U.S. 478, 492, 106 S. Ct. 2639, 2648-49, 91 L. Ed. 2d 397 (1986).

C.     **Ground Three:**

**The failure to provide the resentencing jury with general jury instructions amounted to fundamental error depriving Petitioner of his Fifth, Sixth, Eighth and Fourteenth Amendment rights.**

Petitioner contends that the trial judge's failure to give the resentencing jury

the following Florida Standard Jury Instructions in Criminal Cases amounts to a fundamental error in his trial:    2.02 (statement of charge); 2.03 (pleas of not guilty, reasonable doubt, and burden of proof); 2.04 (weighing of evidence); 2.04(a) (expert witnesses); 2.04(b) (accomplice); 2.04(d) (defendant not testifying); 2.04(e) (defendant's statements);  2.05 (rules for deliberation);  2.07 (cautionary instruction); and 2.09 (submitting case to jury).  He acknowledges, however, that his attorney failed to raise an objection to these omissions.  <u>See</u> doc. 15 at 63. Petitioner also contends that the jury was provided with conflicting positions regarding how they were to consider the aggravating circumstances.

1.     <u>State Proceedings</u>

Petitioner raised the issue of the trial court's failure to give the general instructions in the direct appeal of his resentencing.  The Florida Supreme Court, rejecting the claim, held as follows:

> Archer did not object to the instructions at trial, and thus they are not preserved for appeal.  In any event, we have carefully reviewed the record and find that the claimed errors, taken individually or collectively, do not constitute fundamental error.  We therefore, find no merit to this claim.

**Archer II**, 673 So. 2d at 20-21 (internal citation omitted).  Thus, the state court found this issue to be procedurally barred and also found that no fundamental error occurred.  Petitioner failed to raise the issue of the conflicting positions with regard to the aggravating circumstances in any of his proceedings in state court.

2.      **Clearly Established Supreme Court Law**

The standards regarding procedural default and exceptions thereto are set forth <u>supra</u>.  Additionally, with regard to Petitioner's failure to raise a claim with regard to the aggravating circumstances, in order to satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  <u>Duncan</u>, <u>supra</u>, 513 U.S. at 365-66; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); <u>Picard</u>, 404 U.S. at 277-78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In <u>Picard</u> <u>v. Connor</u>, <u>supra</u>, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," <u>id</u>. at 278, the Court rejected the contention  that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In <u>Anderson v. Harless</u>, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the

requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  Id. 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner had cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7, (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id., 459 U.S. at 7 and n. 3.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, supra.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[12]  The Supreme Court explained,"[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, [us cite] 115 S. Ct. at 888.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a

---

[12]The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin, supra. The Baldwin Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Id. This language, while not part of the Court's holding, provides an instructive and useful rule of thumb. With regard to this statement, the Eleventh Circuit stated in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

Id., 416 F.3d at 1302-03 (citations omitted).[13]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair

---

[13]In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  Id.

presentation" requirement.[14]  However, after <u>Duncan</u>, the Eleventh Circuit has taken a more restrictive approach.  For example, in <u>Zeigler v. Crosby</u>, the Circuit Court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the Federal Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).  The court specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause.  <u>Id</u>. at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." <u>Id</u>.   An issue that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, <u>i.e.</u>, procedurally barred from federal review.  <u>O'Sullivan</u>, 526 U.S. at 839-40, 848; <u>Bailey v. Nagle</u>, <u>supra</u>.

**3.    <u>Federal Review of State Court Decision</u>**

      The Florida Supreme Court found Petitioner's claim to be procedurally

---

[14]<u>See</u>, <u>e.g.</u>, <u>Watson v. Dugger</u>, 945 F.2d 367 (11th Cir. 1991) (finding issue to be exhausted when petitioner argued in state court that trial court misapplied state law when it refused to give petitioner's requested jury instruction and thereby allowed the jury to convict without necessary showing of criminal intent, and argued in federal court that this was a due process violation); <u>Mattox v. Dugger</u>, 839 F.2d 1523 (11th Cir. 1988) (holding that a federal habeas corpus petition should not be dismissed on grounds of procedural default when a petitioner has previously brought an issue before a state court alleging only state law violations, when such a claim is equally supported by federal law, and the state cites such federal law in support of its position); <u>Hutchins v. Wainwright</u>, 715 F.2d 512, 518-19 (11th Cir. 1983) (petitioner exhausted Sixth Amendment confrontation clause claim in state court by raising hearsay objections, even though petitioner never raised Sixth Amendment claim in state court).

barred because he failed to preserve the issue for appeal and no fundamental error occurred which would excuse the default.  Because Petitioner is barred by state procedural rules from exhausting the substance of his claims, procedural default exists for purposes of federal habeas review.  <u>See</u> <u>Coleman v. Thompson</u>, <u>supra</u>.  Additionally, Petitioner has not made any  showing to excuse his default, i.e., he has not shown cause for the default nor argued resulting prejudice.

Furthermore, Petitioner has not demonstrated a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of this claim. Petitioner has cited no Supreme Court case holding that the failure to give a resentencing jury general instructions is constitutional error, much less a fundamental miscarriage of justice which would overcome a procedural bar. Generally, "[i]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis.'" <u>Neder v. United States</u>, 527 U.S. 1, 8, 119 S. Ct. 1827, 1833, 144 L. Ed. 2d 35 (1999)(quoting <u>Rock v. Clark</u>, 478 U.S. 570, 579, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986)).

Only in rare cases has the Supreme Court held that a trial error is structural thus requiring automatic reversal.  <u>See</u> <u>e.g.</u>,   <u>Gideon v. Wainwright</u>, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963) (complete denial of counsel); <u>Tumey v. Ohio</u>, 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 2d 749 (1927) (biased trial judge); <u>Vasquez v. Hillery</u>, 474 U.S. 254, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986) (racial discrimination in selection of grand jury); <u>McKaskle v. Wiggins</u>, 465 U.S. 168, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984) (denial of self-representation at trial); <u>Waller v. Georgia</u>, 467 U.S. 39, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984) (denial of public trial); <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993) (defective reasonable doubt instruction).

Petitioner's claim of error does not rise to the level of a structural error. Therefore, he is not entitled to federal habeas review of his claim of trial error.

D.     **Ground Four:**

**Admitting victim impact evidence and failing to provide a jury instruction
regarding this evidence violated Petitioner's due process rights as guaranteed by
the Eighth and Fourteenth Amendments.**

At Petitioner's retrial the jury heard victim impact testimony from Sandra
Coker, wife of the murder victim in this case.  Petitioner's trial counsel objected
to the testimony, but this objection was overruled by the trial court.  The court
gave no jury instruction with regard to this evidence.  Petitioner contends that
admission of this evidence violated his Eighth Amendment rights and rendered
his resentencing trial fundamentally unfair.  Petitioner also contends admission
of this evidence violated Florida's statute on victim impact evidence, Fla. Stat. §
921.141(7).  Finally, Petitioner argues that in Bonifay v. State, 680 So. 2d 413 (Fla.
1996), the Florida Supreme Court expanded by judicial legislation section
921.141(7) by affirming the inclusion of evidence concerning the impact the
victim's death has on the family members.

1.     **State Proceedings**

In Payne v. Tennessee, 501 U.S. 808, 111 S. Ct. 2597, 115 L. Ed. 2d 720
(1991),  the Supreme Court held that the Eighth Amendment did not erect a *per se*
bar prohibiting a capital sentencing jury from considering victim impact evidence.
In so holding, the Court reconsidered two previous holdings which barred
admission of victim impact evidence.[15]  The Court held that, "[w]e are now of the
view that a State may properly conclude that for the jury to assess meaningfully
the defendant's moral culpability and blameworthiness, it should have before it at
the sentencing phase evidence of the specific harm caused by the defendant."
Id., 501 U.S. at 825.  Therefore, the Court concluded that:

> [a] State may legitimately conclude that evidence about the victim
> and about the impact of the murder on the victim's family is relevant

---

[15]The Court reconsidered its previous holdings in Booth v. Maryland, 482 U.S. 496, 107 S. Ct.
2529, 96 L. Ed 2d 440 (1987), and South Carolina v. Gathers, 490 U.S. 805, 109 S. Ct. 2207, 104 L. Ed.
2d 876 (1989).

to the jury's decision as to whether or not the death penalty should
be imposed.  There is no reason to treat such evidence differently
than other relevant evidence is treated.

Id., 501 U.S. at 827.  The Court left intact its previous prohibitions on the

admissibility of characterizations and opinions from the victim's family about the

crime, the defendant, or the appropriate sentence to be imposed.  See id., 501

U.S. at 830, n. 2.

Subsequent to the Payne decision, the Florida legislature enacted Florida

Statute Section 921.141(7)(July 1992) which provided as follows:

(7) Victim Impact Evidence– Once the prosecutor has provided
evidence of the existence of one or more aggravating circumstance
as described in subsection (5), the prosecution may introduce, and
subsequently argue, victim impact evidence.  Such evidence shall be
designed to demonstrate the victim's uniqueness as an individual
human being and the resultant loss to the community's members by
the victim's death.  Characterizations and opinions about the crime,
the defendant, and the appropriate sentence shall not be permitted
as part of victim impact evidence.

In the direct appeal of his resentencing trial Petitioner argued that the

victim impact evidence given by Mrs. Coker should have been excluded on ex

post facto grounds and because it was essentially a nonstatutory aggravator.

The Florida Supreme Court addressed these identical arguments in Windom v.

State, 656 So. 2d 432 (Fla. 1995).  With regard to whether victim impact evidence

is essentially nonstatutory aggravation, the court held that:

[w]e do not believe that the procedure for addressing victim impact
evidence, as set forth in the statute, impermissibly affects the
weighing of the aggravators and mitigators which we approved in
State v. Dixon, 283 So. 2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94
S. Ct. 1950, 40 L. Ed. 2d 295 (1974), or otherwise interferes with the
constitutional rights of the defendant.  Therefore, we reject the
argument which classifies victim impact evidence as a nonstatutory
aggravator in an attempt to exclude it during the sentencing phase of
a capital case.

Rather, we believe that section 921.141(7) indicates clearly that

> victim impact evidence is admitted only after there is present in the
> record evidence of one or more aggravating circumstances.  The
> evidence is not admitted as an aggravator but, instead, as set forth in
> section 921.141(7), allows the jury to consider "the victim's
> uniqueness as an individual human being and the resultant loss to
> the community's members by the victim's death." § 921.141(7).

Id. at 438.  With regard to the argument that applying this section to Windom's

case was a violation of ex post facto clauses of the Florida and U.S. Constitutions

because the murders at issue took place in February 1992 and § 921.141(7) did

not go into effect until July 1992, the court disagreed and held "[s]ection

921.141(7) only relates to the admission of evidence and is thus procedural.

Therefore, application of section 921.141(7) in the present case does not violate

the prohibition against ex post facto laws."  Id. at 439 (internal citation omitted).

The Florida Supreme Court rejected Petitioner's arguments for the same reason.

> In Petitioner's case, the court held as follows:

> Archer's claim that the trial court erred in admitting victim-impact
> evidence is likewise without merit.  Archer claims that victim-impact
> evidence is a nonstatutory aggravator and its application here would
> violate ex post facto prohibitions.  We recently rejected similar
> arguments in Windom v. State, 656 So. 2d 432 (Fla.), cert. denied, 516
> U.S. 1012, 116 S. Ct. 571, 133 L. Ed. 2d 495 (1995), and similarly reject
> Archer's claim.

Archer II, 673 So. 2d at 21.

2.      Clearly Established Supreme Court Law

> See Section D1 above.

3.      Federal Review of State Court Decision

        Initially, Petitioner's argument that the victim impact testimony in this case

violated Fla. Stat. § 921.141(7) and that the Florida Supreme Court has judicially

expanded that provision is not a matter that a federal habeas court will entertain.

Federal habeas relief is available to correct only constitutional injury.  28 U. S. C.

§  2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 479-80, 116 L. Ed.

2d 385 (1991) (errors that do not infringe upon a defendant's constitutional rights

provide no basis for federal habeas corpus relief); Wainwright v. Goode, 464 U.S. 78, 104 S. Ct. 378, 78 L. Ed. 2d 187 (1983); Barclay v. Florida, 463 U.S. 939, 958-659, 103 S. Ct. 3418, 3429, 77 L. Ed. 2d 1134 (1983) ("Mere errors of state law are not the concern of this court . . . unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.") (citations omitted); Engle v. Isaac, 456 U.S. 107, 102 S. Ct. 2976, 73 L. Ed. 2d 1361 (1981); Carrizales v. Wainwright, 699 F.2d 1053 (11th Cir. 1983). Questions of state law and procedure "rarely raise issues of federal constitutional significance.  [A] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."  Tejada v. Dugger, 941 F.2d 1551 (11th Cir. 1991), cert. denied, 502 U.S. 1105, 112 S. Ct. 1199, 117 L. Ed. 2d 439 (1992) (quoting Carrizales, supra).  "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process."  Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988).

State law issues may be reviewed in this federal forum only when the alleged errors were "so critical or important to the outcome of the trial to render the entire trial fundamentally unfair."  Tejada v. Dugger, 941 F.2d at 1560. The Supreme Court "ha[s] defined the category of infractions that violate 'fundamental fairness' very narrowly."  Estelle, 502 U.S. at 352.  The instant case is not one in which there were such critical errors, if indeed there were any errors, that a constitutional violation is apparent.

Additionally, no Supreme Court case has held Florida's victim impact statute unconstitutional.  Therefore, the Florida Supreme Court's decision cannot be "contrary to" clearly established federal law as determined by the Supreme Court.  See Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir. 2003)("In applying the 'contrary to' prong of AEDPA, we have recognized that where no Supreme Court precedent is on point, 'we cannot say that the state court's

conclusion . . . is contrary to clearly established Federal law as determined by the U. S. Supreme Court.'" <u>McIntyre v. Williams</u>, 216 F.3d 1254, 1258 (11th Cir. 2000)).

In <u>Payne v. Tennessee</u>, <u>supra</u>, the Court held that the Eighth Amendment does not preclude victim impact evidence which "is simply another form or method of informing the sentencing authority about the specific harm caused by the crime in question."  <u>Id</u>., 501 U.S. at 825.  In her concurrence Justice O'Connor commented,

> [c]ertainly there is no strong societal consensus that a jury may not take into account the loss suffered by a victim's family or that a murder victim must remain a faceless stranger at the penalty phase of a capital trial.  Just the opposite is true.  Most States have enacted legislation enabling judges and juries to consider victim impact evidence.  The possibility that this evidence may in some cases be unduly inflammatory does not justify a prophylactic, constitutionally based rule that this evidence may never be admitted.  Trial courts routinely exclude evidence that is unduly inflammatory; where inflammatory evidence is improperly admitted, appellate courts carefully review the record to determine whether the error was prejudicial.

<u>Id</u>., 501 U.S. at 831.  Other than prosecutorial argument in closing, the victim impact testimony in <u>Payne</u> consisted of testimony by the mother/grandmother of the victims who testified about the impact on her grandson of the murder of his mother and sister.[16]  With regard to this testimony the Court held that:

> the testimony illustrated quite poignantly some of the harm that Payne's killing had caused; there is nothing unfair about allowing the jury to bear in mind that harm at the same time as it considers the mitigating evidence introduced by the defendant.  The Supreme Court of Tennessee in this case obviously felt the unfairness of the rule pronounced by <u>Booth</u> when it said:        "It is an affront to the

---

[16]When asked how the murders affected her grandson, Ms. Zvolanek testified as follows:

"He cries for his mom.  He doesn't seem to understand why she doesn't come home.  And he cries for his sister Lacie.  He comes to me many times during the week and asks me, Grandmama, do you miss my Lacie.  And I tell him yes.  He says, I'm worried about my Lacie."  <u>Payne v. Tennessee</u>, 501 U.S. 808, 814-15, 111 S. Ct. 2597, 2603, 115 L. Ed. 2d 720 (1991)(citations to the record omitted).

civilized members of the human race to say that at sentencing in a capital case, a parade of witnesses may praise the background, character and good deeds of Defendant (as was done in this case), without limitation as to relevance, but nothing may be said that bears upon the character of, or the harm imposed, upon the victims."

Id., 501 U.S. at 826 (internal citation omitted).

In the instant case, the testimony of Sandra Coker that Petitioner objects to encompasses three and one-half pages of the trial transcript. In addition to testifying about her husband's employment, Mrs. Coker described her husband and the impact of his death on the family as follows:

. . . Wayne was a– he was a good man. I lived with him 12 years. I know the good side and the bad side. I will tell you the good side outweighed the bad. He loved our children and we had a good relationship, and we miss him terribly. It's– it's hard to express your whole heart and how you totally feel, but Wayne I feel like was an asset to the community and he wasn't a troublemaker and he didn't go out drinking. He was working on a Saturday and he was not out doing other things that he could have been doing. He was working for his family and trying to buy us things we needed, you know, to stay alive and to– for us to have a few things to enjoy.

And he was– I have missed him greatly and if he had not been that type of person and with the Lord's help I tell you I couldn't have went on. His character of the example that he set with me has carried me and the children.

* * * * *

[His death] had a hard impact on us. The– like I was saying, I have never taken so much medicine in my life. It traumatizes what other conditions that you might have. And my son, he's had extremely bad nightmares and he sees a psychiatrist. And Shelley has seen a psychiatrist. She has seen a counselor and she has got– she got the shingles, and they said it was very unusual for a small child to get them like that. First it was carrying stress, worrying about his dad.

Q.:    This was after his death?

Her speech impediment has gotten real low after seeing some things on

TV and which had worried her, and she kept to herself.  And so they–
and I don't know what the future holds for them, because sometimes we
don't know everything with kids, you know.  They say what happens in
your childhood has a– has an effect on your adulthood.  I still got all of
that to go through with two, you know, and--

Q.:    Thank you, ma'am.

Resp.'s Exh. II, Tab W at 396-97 & 398-99.

During her testimony, Mrs. Coker did not comment on the defendant, the
circumstances of the crime, nor her feelings about an appropriate sentence.  She
testified about her husband's character and that she felt he was an asset to the
community.  Her references to how she and the children have coped since the
murder do not exceed the constitutional bounds of <u>Payne</u>.  Neither the prosecutor
nor the defense attorney referred to Mrs. Coker's testimony in his opening or closing
arguments.  Therefore, these comments are not so prejudicial or inflammatory as to
render Petitioner's trial fundamentally unfair.  This claim for relief is denied.

D.    Ground Five:

<u>Failure to provide an instruction concerning Petitioner's age as a mitigator violated
his Eighth and Fourteenth Amendments rights</u>.

Petitioner contends that the failure of the trial court to give a specific
instruction that the jury could consider his age as a mitigating factor "in effect . . .
essentially granted a directed verdict for the State on that mitigator."  Doc. 15 at 80.

1.    <u>State Proceedings</u>

At the charge conference of his resentencing trial Petitioner requested an
instruction that the jury could consider his age of 26 as a mitigating factor.  The trial
court denied the request for the age mitigator instruction holding that, "I find the
[sic] 26 years of age has historically not been found to be a mitigator unless there
are some additional or other circumstances or facts to reflect that–despite the
chronological age that physically and emotionally and mentally and some other way
that his–that age might be considered separately and different." Resp.'s Exh. II, Tab
X at 439.  The trial court did give the following instruction with regard to mitigating

circumstances:

> [a]mong the mitigating circumstances you may consider, if established by the evidence, are: First of all, that Robin Lee Archer has no significant history of prior criminal activity; and No. 2, that the defendant was an accomplice in the offense for which he is to be sentenced and that the offense was committed by another person and the defendant's participation was relatively minor; No. 3, that any other aspect of the defendant's character or record in any other circumstances of the offense.

Resp's Exh. II, Tab AA at 496.

When addressing this issue on appeal, the Florida Supreme Court held as follows:

> [a]dditionally, we reject Archer's claim that the trial court erred in refusing to instruct the jury that it could consider Archer's age of 26 as a mitigating factor.  The court found that there was no evidence reflecting that Archer's age at the time of the homicide did not accurately reflect his mental or physical age and instead gave the general instruction that the jury could consider "any aspect of the defendant's character or record and any other circumstances of the offense".

> We recently addressed a similar claim in <u>Mungin v. State</u>, 667 So.2d 751 (Fla. 1995).  We state again that the better practice may be for trial courts to give the specific instruction on age.  However, on the facts of this record, we agree with the trial court and find that it did not abuse its discretion in failing to give the requested instruction.

<u>Archer II</u>, 673 So.2d at 21.

2.     <u>Clearly Established Supreme Court Law</u>

There is no Supreme Court case holding that a sentencing court must give a jury a specific instruction on age as a mitigating circumstance nor is there any case holding that it is reversible error not to instruct that age is a mitigator to be considered.  However, the Supreme Court has held that to comply with <u>Furman v. Georgia</u>, <u>supra</u>, sentencing procedures should not create "a substantial risk that the [death penalty will] be inflicted in an arbitrary and capricious manner."  <u>Gregg v. Georgia</u>, 428 U.S. 153, 188, 96 S. Ct. 2909, 2932, 49 L. Ed. 2d 859 (1976).  Therefore,

"[a] process that accords no significance to relevant facets of the character and record of the individual offender or the circumstances of the particular offense excludes from consideration in fixing the ultimate punishment of death the possibility of compassion or mitigating factors stemming from the diverse frailties of humankind."   Woodson v. North Carolina, 428 U.S. 280, 304, 96 S. Ct. 2978, 2991, 49 L. Ed. 2d 944 (1976).  The sentencing process must include these individualized considerations in order to insure the reliability, under the Eighth Amendment, that "death is the appropriate punishment in a specific case."  Id., 428 U.S. at 305.

Thus, a plurality of the Supreme Court in Lockett v. Ohio, 438 U.S. 586, 604, 98 S. Ct. 2954, 2964-65, 57 L. Ed. 2d 973 (1978), held that "the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." (Footnote omitted); See also Eddings v. Oklahoma, 455 U.S. 104, 102 S. Ct. 869, 71 L. Ed. 2d 1 (1982); Skipper v. South Carolina, 476 U.S. 1, 106 S. Ct. 1669, 90 L. Ed. 2d 1 (1986); Hitchcock v. Dugger, 481 U.S. 393, 107 S. Ct. 1821, 95 L. Ed. 2d 347 (1987); Abdul-Kabir v. Quarterman, ___ U.S. ___, 127 S. Ct. 1654 (April 25, 2007).   It is not sufficient that a defendant's mitigating evidence simply be admissible, the jury must be able to give "meaningful consideration" to this evidence. See Abdul-Kabir v. Quarterman, 127 S. Ct. at 1666.  In  Johnson v. Texas, 509 U.S. 350, 113 S. Ct. 2658, 125 L. Ed. 2d 290 (1993),  the Court emphasized that Lockett and its progeny "stand only for the proposition that a State may not cut off in an absolute manner the presentation of mitigating evidence, either by statute or judicial instruction, or by limiting the inquiries to which it is relevant so severely that the evidence could never be part of the sentencing decision at all."  Johnson, 509 U.S. at 368.  With regard to youth as a mitigating circumstance, the Court stated that :

      [o]ur cases recognize that 'youth is more than a chronological fact.  It
      is a time and condition of life when a person may be most susceptible

to influence and to psychological damage.'  A lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young.  These qualities often result in impetuous and ill-considered actions and decisions.  A sentencer in a capital case must be allowed to consider the mitigating qualities of youth in the course of deliberations over the appropriate sentence.

**Id.** (citation omitted).

**3.    Federal Review of State Court Decision**

In Petitioner's resentencing trial, the trial court gave a general "catchall" mitigation instruction in which the jury was told that it could consider any other aspect of the defendant's character or record, and any other circumstances of the offense. In this case the trial court did not preclude Petitioner's counsel from presenting evidence related to his age as mitigating nor did he limit its consideration by the jury, he simply refused to offer a specific instruction regarding it.  However, Petitioner's attorney did not raise the issue of Petitioner's youth during his presentation of penalty phase evidence nor in closing argument.  The jury was only presented with argument regarding co-defendant Bonifay's age.  Furthermore, Petitioner's age should have been self-evident.

Petitioner's trial counsel did not argue that Petitioner had a psychological maturity of less than 26 years of age or had any other conditions or impairments which could contribute to his being considered as having a mental age of less than 26 years.  Petitioner has also failed to raise in his federal habeas petition any such argument and he has not cited any case in which a court specifically found a 26 year old's age to be a mitigating factor.  Furthermore, there is no evidence in the record to support a contention that Petitioner had a mental age less than 26 years. Therefore, while Petitioner's age could properly be considered as a aspect of his character, his trial counsel chose not to emphasize it.  Given the evidence in this case, the failure to give an instruction as to Petitioner's age did not violate the Eighth Amendment.

Petitioner has failed to demonstrate that the state courts' rejection of this claim relied on erroneous facts, or applied law contrary to established United States Supreme Court precedent or in a manner which was objectively unreasonable in light of such precedent.  Given these considerations, this court cannot conclude that the Florida Supreme Court unreasonably applied, or reached a decision contrary to, clearly established federal law.  Therefore, Petitioner is not entitled to habeas relief on this ground.

**E.     Ground Six:**

**Granting the State's cause challenges for jurors who could not recommend death if Petitioner were not the triggerman violated his Eighth and Fourteenth Amendment rights.**

Petitioner contends that the mitigating fact that he was not the actual triggerman was not considered by the jury because the State was able to exclude all the prospective jurors who expressed concern about recommending a death sentence to one who did not do the actual killing.  Petitioner contends that his attorney did not agree to juror number 2, Emma Pineda, being excluded for cause nor did he want three other jurors excused for cause.[17]

**1.     State Proceedings**

The Florida Supreme Court addressed this claim as follows:

In his last claim, Archer alleges error in the trial court's granting of several of the State's cause challenges of jurors.  After voir dire, the State moved to dismiss several jurors for cause based upon their representation that they could not recommend the death penalty if Archer was not the triggerman.  Archer did not object to this motion and in fact agreed with the State to dismiss these jurors.  Consequently, there was no ruling by the trial judge upon which to base a claim of error.  We therefore reject this claim.  **Peterka v. State**, 640 So.2d 59 (Fla. 1994), **cert. denied**, 513 U.S. 1129, 115 S. Ct. 940, 130 L. Ed. 2d 884 (1995).

**Archer II**, 673 So.2d at 21.  This claim is, therefore, procedurally barred from federal

---

[17]Petitioner does not identify the other three prospective jurors in his petition.

habeas review.

## 2.     Clearly Established Supreme Court Law

The standards regarding procedural default and exceptions thereto are set forth supra.   Additionally, in order to satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.   Duncan, supra, 513 U.S. at 365-66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277-78.

## 3.     Federal Review of State Court Decision

The Florida Supreme Court found Petitioner's claim to be procedurally barred because he failed to preserve the issue for appeal.  Because Petitioner is barred by state procedural rules from exhausting the substance of his claims, procedural default exists for purposes of federal habeas review.  See Coleman v. Thompson, supra.  Additionally, Petitioner has not made any showing to excuse his default, i.e., he has not shown cause for the default nor argued resulting prejudice.

Furthermore, Petitioner has not demonstrated a fundamental miscarriage of justice in order for a federal habeas court to reach the merits of a claim.  A review of the voir dire shows Petitioner's defense counsel agreed to the dismissal of all of the jurors the State challenged for cause, including Ms. Pineda.   See Resp.'s Exh. II, Tab T at 71-72.  The Sixth Amendment guarantees a defendant the right to a trial by impartial jurors.  In Witherspoon v. Illinois, 391 U.S. 510, 522, 88 S. Ct. 1770, 1777, 20 L. Ed. 2d 776 (1968), the Court held that "a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction."  The Court later clarified this standard in Wainwright v. Witt,  469 U.S. 412, 105 S. Ct. 844, 83 L. Ed. 2d 841 (1985), and held that the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment

is "whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" <u>Id</u>. , 469 U.S. at 424 (quoting <u>Adams v. Texas</u>, 448 U.S. 38, 45, 100 S. Ct. 2521, 2526, 65 L. Ed. 2d 581 (1980)).

The Court in <u>Witt</u> addressed this issue in the context of federal habeas review and held that the findings of the trial judge are presumed correct unless one of the enumerated reasons for avoiding the presumption are present. <u>See</u> § 2254(d). The trial judge's "predominant function in determining juror bias involves credibility findings whose bias cannot be easily discerned from an appellate record." <u>Witt</u>, 469 U.S. at 429. Therefore, because assessments of demeanor and credibility are "peculiarly within a trial judge's province," his or her determination on this issue is a factual finding which deserves deference on habeas review. <u>Id</u>., 469 U.S. at 428.

In a recent case, <u>Uttecht v. Brown</u>, 127 S. Ct. 2218, 167 L. Ed. 2d 1014 (2007), the Court reviewed these and other relevant decisions and elaborated as follows:

> [t]hese precedents establish at least four principles of relevance here. First, a criminal defendant has the right to an impartial jury drawn from a venire that has not been tilted in favor of capital punishment by selective prosecutorial challenges for cause. Second, the State has a strong interest in having jurors who are able to apply capital punishment within the framework state law provides. Third, to balance these interests, a juror who is substantially impaired in his or her ability to impose the death penalty under the state-law framework can be excused for cause; but if the juror is not substantially impaired, removal for cause is impermissible. Fourth, in determining whether the removal of a potential juror would vindicate the State's interest without violating the defendant's right, the trial court makes a judgment based in part on the demeanor of the juror, a judgment owed deference by reviewing courts.
>
> Deference to the trial court is appropriate because it is in a position to assess the demeanor of the venire, and of the individuals who compose it, a factor of critical importance in assessing the attitude and qualifications of potential jurors.

<u>Id</u>., 127 S. Ct. at 2224 (internal citations omitted). In addressing the fact that defense

counsel in <u>Uttecht</u> had made no objection to the removal of the prospective juror in question for cause, the Court noted that:

> [w]e nevertheless take into account voluntary acquiescence to, or confirmation of, a juror's removal.  By failing to object, the defense did not just deny the conscientious trial judge an opportunity to explain his judgment or correct any error.  It also deprived reviewing courts of further factual findings that would have helped to explain the trial court's decision.  The harm caused by a defendant's failure to object to a juror's excusal was described well by a Washington appellate court in a different case:
>
> 'When a challenge for cause is made, opposing counsel can object either on the grounds that it is facially insufficient or that the facts needed to support it are not true. [Defendant] did neither.  Had [defendant] objected immediately to the State's challenge for cause, the court could have tried the issue and determined the law and facts.  Because [defendant] did not timely object to the excusal of Juror 30, the court had no opportunity to remedy whatever factual questions were in the mind of [defendant's] counsel.'

<u>Id</u>., 127 S. Ct. at 2229 (quoting <u>State v. Taylor</u>, 89 Wash. App. 1033 (1988)(unpublished opinion)).

Turning to the facts of this case, with regard to Ms. Pineda, she indicated that she did not want to sit in judgment of anyone (Resp.'s Exh. II, Tab T at 12), that she did not believe in the death penalty (<u>Id</u>. at 16) and that she could not recommend a death sentence under any circumstances (<u>Id</u>. at 64).  She was not, therefore, excluded because of her inability to recommend the death penalty for the nontriggerman.  She was excluded because her feelings about the death penalty would have substantially impaired her from fulfilling her duties to follow the law and her oath as a juror in this case.  Furthermore, the record is clear that Petitioner's defense counsel did not object to the removal of Ms. Pineda for cause.  (<u>Id</u>. at 72).  Therefore, there is no merit to Petitioner's argument with regard to the removal of Ms. Pineda.

Petitioner has failed to identify the other jurors whom he contends were removed because they could not recommend the death penalty for a nontriggerman.

However, the State moved to strike the following prospective jurors for cause "based upon their representation they don't believe in the death penalty or could not recommend it for the nontriggerman": Ms. Shuler, Mr. Zachary, Ms. Pineda, Mr. Longmire and Ms. Lee. (Id. at 71).[18]   As well as not being able to recommend death for a nontriggerman, Ms. Shuler, Mr. Longmire and Ms. Lee had all expressed that they did not believe in the death penalty under any circumstances. (Id. at 15-16, 64-65). Therefore, they were properly excluded for cause.

Petitioner has failed to demonstrate a fundamental miscarriage of justice which would overcome a procedural default.  Therefore, this claim is procedurally barred from habeas review.

F.      Ground Seven:

**Denial of Petitioner's request for a new trial, based upon newly discovered evidence of recanted testimony of key witness, violated Petitioner's Fifth, Sixth, Eighth and Fourteenth Amendment Rights.**

In his last claim for habeas relief, Petitioner contends that he is entitled to a new trial based on the recanted testimony of Patrick Bonifay, which Petitioner claims is new evidence of his innocence of the crime.   In Petitioner's original trial, Bonifay testified that Petitioner hired him to commit the murder of Daniel Wells and to disguise the murder as a robbery.   Bonifay testified that Petitioner provided him a plan which included a description of the store, the location of the store's cash box, what he should say to the clerk, and when to shoot him.   Also, Bonifay testified that Petitioner secured the gun used and delivered it to him.   See Archer I, 613 So.2d at 447.   At Petitioner's resentencing trial, Bonifay's prior testimony was read into the record.

In February of 2001, at his own postconviction proceeding, Bonifay recanted his previous trial testimony.   See Archer III, 934 So.2d at 1193.   Bonifay testified, against his counsel's advice, that there was never an arrangement between himself

---

[18]Petitioner's attorney felt that Mr. Zachary had been rehabilitated, and the State agreed. Mr. Zachary ultimately served as one of the jurors in the case.  See Resp.'s Exh. II, Tab T at 72.

and Petitioner to kill Daniel Wells.  Bonifay testified that he was tired of lying and did not want another man's blood on his hands.  At Petitioner's postconviction hearing, Bonifay again recanted his prior testimony.  While maintaining that there was no plan to kill Wells and that Petitioner had no involvement in the crime, Bonifay did admit that Petitioner supplied information about the layout of the store, including the location and amount of money inside.  Bonifay testified that he fabricated Petitioner's involvement in order to shift blame and avoid the death penalty.  Bonifay also explained that Petitioner may not have known that he was delivering the murder weapon to Bonifay because he received the gun in a bag from Bonifay's friend.  See id. at 1194.

1.   State Proceedings

During his postconviction proceeding Petitioner raised the issue of his innocence by claiming that Bonifay's recantation was newly discovered evidence. The postconviction court found that Petitioner failed to establish either prong of Florida's newly discovered evidence standard.[19]  The Florida Supreme Court held that the postconviction court erred when it rejected Petitioner's claim as to the first prong of the standard.  The court held that a recantation is not precluded from being considered newly discovered evidence simply because the defendant knew the witness was not telling the truth at the time of the trial or because the defendant took the stand to testify contrary to the witness.  The court held that "[t]he appropriate question was whether [Petitioner] was or should have been aware of the existence of evidence that would demonstrate that Bonifay's testimony was false."  Archer III, 934 So.2d at 1194.  The court found that the record contained no evidence to conclude that Petitioner could have established that Bonifay was lying in his trial

---

[19]Pursuant to Jones v. State, 709 So.2d 512, 521 (Fla. 1998), in order to obtain relief based on newly discovered evidence a petitioner must demonstrate (1) that the evidence offered must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that the evidence could not have been known by the defendant or his counsel by the use of diligence, and (2) that the newly discovered evidence must be of such a nature that it would probably produce an acquittal on retrial.

testimony.  The recantation was considered newly discovered evidence because "the recantation offers a completely different version of the facts that, if true, could undermine [Petitioner's] conviction and sentence."  Id. at 1195.

With regard to the second prong of the newly discovered evidence standard, the Florida Supreme Court stated:

> the postconviction court found that Bonifay's recantation was not credible and therefore would not produce a different result at a new trial.  Emphasizing the contrast between Bonifay's prior testimony and his recantation, the court explained its analysis as follows:
>
>> The Court heard Bonifay's recantation and had extensive opportunity to observe his testimony on more than one occasion and finds that it lacks credibility.   Jury Instruction 2.04 on the credibility of witnesses can provide a framework for credibility analysis.  Did Bonifay seem to have an accurate memory?  His memory seemed more accurate in 1991. Was Bonifay honest and straightforward in answering the attorney's questions?  He seemed to be hedging often during his testimony, but more so in his recantation.  Did Bonifay have an interest in how the case should be decided?  If this was not a planned murder but simply a robbery gone bad, then Bonifay is probably not eligible for the death penalty, so his recantation could potentially affect the imposition of the death penalty against Bonifay.  Did Bonifay at some other time make a statement that is inconsistent with the recantation?  Bonifay's first three statements about this murder consistently pointed to Defendant as the mastermind, contrary to his recantation.  Has Bonifay been convicted of a crime?  Bonifay is on death row.
>>
>> State v. Archer, No. 91-0606-J, order at 23 (Fla. 1st Cir. order filed Feb. 25, 2004).
>
> The court then evaluated each of Bonifay's prior statements and found that all together the prior statements consistently portrayed [Petitioner] as the mastermind of the crime.  The Court then stated:
>
>> However, even in his recantation Bonifay implicates Defendant.  Bonifay reiterates that Defendant told him how

> to commit the crime, where the security measures were, where the money was kept, which  store served as the collection point for the money from all the stores, and more.  Bonifay now denies that Defendant asked him to kill someone, but reasserts that Defendant did not have a problem with Daniel Wells.  On cross examination, Bonifay was asked: "How did you know that the wrong man was killed if Mr. Archer hadn't told you who needed to be killed?" and he answered: "Because I was informed that on a certain day, a certain person would work there."
>
> Based on the Court's experience, common sense, and personal observations of Patrick Bonifay, the Court is satisfied that this new testimony is false.  After listening to Mr. Bonifay, observing his demeanor, and analyzing his testimony, the Court does not believe his recantation.

> State v. Archer, order at 26 (record citations omitted).

Archer III, 934 So.2d at 1195.  The Florida Supreme Court found that the record supported the postconviction court's findings.

The court noted that it is "highly deferential to a trial court's judgment on the issue of credibility," and that it has "repeatedly observed that recantations are 'exceeding unreliable.'"  Id. at 1196 (citations omitted).  The court carefully considered each of Petitioner's arguments that the postconviction court's conclusions were incorrect, but the court found that there was competent, substantial evidence to support the postconviction court's findings as to credibility and affirmed the denial of relief "because a recantation which is not credible would not produce an acquittal or a life sentence on retrial."  Id. at 1199.

2.    Clearly Established Supreme Court Law

In Herrera v. Collins, 506 U.S. 390, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993), the petitioner in a federal habeas suit contended that he was entitled to habeas relief because newly discovered evidence (in the form of affidavits) showed that his conviction was factually incorrect.  The Court denied his claim and held that "[c]laims of actual innocence based on newly discovered evidence have never been

held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Id., 506 U.S. at 400. The Court noted that actual innocence is not a constitutional claim, "but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Id., 506 U.S. at 404. The Court declined to decide whether a freestanding claim for actual innocence could ever be brought in a federal habeas action, but commented as follows:

> [w]e may assume, for the sake of argument in deciding this case, that in a capital case a truly persuasive demonstration of "actual innocence" made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there was no state avenue open to process such a claim.  But because of the very disruptive effect that entertaining claims of actual innocence would have on the need for finality in capital cases, and the enormous burden that having to retry cases based on often stale evidence would place on the States, the threshold showing for such an assumed right would necessarily be extraordinarily high.  The showing made by petitioner in this case falls far short of any such threshold.

Id., 506 U.S. at 417.    Later Supreme Court cases have also differentiated freestanding claims of actual innocence with those that were brought in the context of procedurally defaulted constitutional claims.  In Schlup v. Delo, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995), the Court determined that the petitioner's claim of innocence was to be considered procedural rather than substantive because his constitutional claims were based not on his innocence, but rather on claims of ineffective assistance of counsel.  The Court distinguished Herrera by noting that in that case:

> . . . petitioner's claim was evaluated on the assumption that the trial that resulted in his conviction had been error free.  In such a case, when a petitioner has been "tried before a jury of his peers, with the full panoply of protections that our Constitution affords criminal defendants," (O'Connor, J., concurring), it is appropriate to apply an "extraordinarily high" standard of review, (O'Connor, J., concurring).

Id., 513 U.S. at 315-16.  See also, House v. Bell, ___ U.S. ___, 126 S. Ct. 2064, 165 L.

Ed. 2d 1 (2006).

3.    **Federal Review of Claim**

While Petitioner asserts that his Fifth, Sixth, Eighth and Fourteenth Amendment rights were violated, he fails to articulate any cognizable constitutional deprivation resulting from the Florida Supreme Court's decision to not grant him a new trial based on Bonifay's recantation.  As discussed supra, federal habeas relief is available to correct only constitutional injury.  28 U. S. C. §  2254(a); Estelle v. McGuire, supra.

Additionally, as to any freestanding claim of actual innocence, Petitioner does not meet the Herrera standard.   There was a state avenue open to litigate his actual innocence claim, and, in fact, Petitioner availed himself of that avenue.   The postconviction court heard his argument that Bonifay's recantation was newly discovered evidence and found that the recantation was not credible.  The Florida Supreme Court reviewed the postconviction court's findings at length and affirmed that court's credibility findings.  Upon the record already established in the state courts, Petitioner has failed to meet the "extraordinarily high" threshold that any theoretical freestanding claim of actual innocence would have.

Therefore, this claim is not properly brought in this habeas action and will be denied.

## IV. CONCLUSION

For the foregoing reasons, the petition for issuance of a writ of habeas corpus (doc. 15) is DENIED.


ORDERED on March 3, 2008.


/s/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**